UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RODOSVALDO C. POZO,

        Plaintiff,

v.                                      **Case No. 2:18-cv-01486-WED**

SHERIFF DALE J. SCHMIDT,
CHAPLAIN TIMOTHY BAUER,
DR. DEB and
RN TAMMY,

        Defendants.

## SHERIFF DALE J. SCHMIDT and CHAPLAIN TIMOTHY BAUER'S BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. PROC. 56

Defendants, Sheriff Dale J. Schmidt and Chaplain Timothy Bauer, through their attorneys, Crivello Carlson, S.C., submit the following Brief in support of their Motion for Summary Judgment pursuant to Fed. R. Civ. Proc. 56.

### PRETEXT

The plaintiff, Rodosvaldo C. Pozo, ("Pozo" or "Inmate Pozo"), filed a *pro se* Amended Complaint on November 15, 2018 against Sheriff Dale Schmidt and Chaplain Timothy Bauer alleging that they violated his religious rights under the First Amendment while he was an inmate at the Dodge County Detention Facility. (Dkt. 8). After screening the Amended Complaint, this Court allowed Inmate Pozo to proceed on his First Amendment claim relating to the following allegations:

(1)      Sheriff Schmidt and Chaplain Bauer allegedly denied Inmate Pozo a Quran.

(2)      Inmate Pozo was unable to participate in Ramadan because Sheriff Schmidt and

1

Chaplain Pozo "never advised of it" and because he did not have a Quran from which to read.

(3)     Sheriff Schmidt and Chaplain Bauer did not allow Inmate Pozo to participate in Friday Jumu'ah services.

*See* Dkt. 9.

Because Inmate Pozo cannot substantiate these claims against Sheriff Schmidt and Chaplain Bauer, these claims against them must be dismissed.

## FACTUAL HISTORY

Sheriff Dale J. Schmidt and Chaplain Timothy Bauer's factual history is set forth in their Statement of Proposed Material Facts in Support of their Motion for Summary Judgment and are referred to as "Dodge County Defendants' Proposed Material Facts" (DPF). The following is a summary of those facts.

Rodosvaldo Pozo was incarcerated at the Dodge County Detention Facility between April 5, 2018 and August 28, 2018. In 2018, the Dodge County Detention Facility had established policies and procedures for inmates to file a grievance or an appeal. (DPF ¶¶ 3, 5). At the time of booking, inmates are provided with an inmate handbook and jail rules which included the procedures relating to the filing of a grievance or appeal. Inmates are also asked if they had a religious affiliation. (DPF ¶¶ 5, 39). Since Inmate Pozo was an ICE detainee, he also would have been provided an ICE detainee handbook which includes the rules and procedures to make requests or complaints to ICE relating to that inmate's incarceration. (DPF ¶ 6).

There are several steps that must be taken under the Dodge County Detention Facility's grievance policy. If informal resolution fails, a grievance can be made by an inmate on a form specifically provided for that purpose and should be filed within 5 days of the incident. (DPF ¶ 7). If an inmate is not satisfied with the response to the grievance, within 2 days of receipt of the grievance response, the inmate has the option to file an appeal with the Deputy Jail

2

Administrator. (DPF ¶ 8). If an inmate is unhappy with the Deputy Jail Administrator's response to the appeal, the inmate has the option to appeal to the Jail Administrator within 2 days of receiving a response, for a final decision. (DPF ¶ 9). All grievances are assigned a grievance identification number and all requests, grievances and appeals are maintained in an inmate's file, either in paper format or electronically. (DPF ¶¶ 10-11).

Inmate Pozo filed one inmate request relating to a Quran and made a request he would like to participate in the "Friday Jumahs service". It is unclear when this inmate request was filed. In response, an Officer (not one of the defendants) informed Inmate Pozo that he could check the library for the Quran or he could purchase one from a publisher or bookstore. Inmate Pozo also was informed that no Jumu'ah services were available at that time. (DPF ¶ 12).

The first grievance Inmate Pozo filed relating to the Quran or Jumu'ah service was on June 8, 2018. (DPF ¶¶ 13-14). On June 9, 2018, a Sergeant (not one of the defendants) responded to that grievance stating that Inmate Pozo had been provided with a Quran. Inmate Pozo also was informed that the jail did not have Jumu'ah services. (DPF ¶ 15). Inmate Pozo never filed any appeal to the Deputy Jail Administrator or to the Jail Administrator relating to a Quran or attendance at Jumu'ah religious services. (DPF ¶ 16).

During his incarceration in 2018, Inmate Pozo never filed any inmate request, grievance or appeal relating to a request for information as to the dates of Ramadan, that he wanted to participate in Ramadan, or that he was not allowed to participate in Ramadan. (DPF ¶ 17). In his requests and correspondence with ICE, Inmate Pozo never complained or raised any issue to ICE officials about not receiving a Quran, not being able to participate in Jumu'ah services or not being able to participate in Ramadan. (DPF ¶ 18). Based on Inmate Pozo's jail records, the Dodge County Detention Facility never refused to allow Inmate Pozo to possess a Quran or other religious book. (DPF ¶ 45).

3

As Sheriff, Sheriff Schmidt is aware of the overall operations of the Dodge County Detention Facility. Although he receives various reports and communications concerning the Dodge County Detention Facility and occasionally makes rounds of the Detention Facility, he is not involved in its day-to-day operations, generally does not review or approve inmate requests, nor responds or investigates all complaints made regarding religious requests. Sheriff Schmidt would only become involved if the issue rose to his level for evaluation. (DPF ¶¶ 19-20).

In 2018, Sheriff Schmidt did not have any contact with Inmate Rodosvaldo C. Pozo while he was an inmate at the Dodge County Detention Facility. (DPF ¶ 21). Sheriff Schmidt did not receive, review or respond to any requests regarding the Quran, Inmate Pozo's request to attend Jumu'ah religious services or that he wanted to participate in or be informed of when Ramadan took place. (DPF ¶ 21). Nor did Sheriff Schmidt personally participate in any decision as to whether Inmate Pozo should receive a Quran, attend religious services or participate in Ramadan. (DPF ¶ 21). In his role as Sheriff, while Inmate Pozo was incarcerated in 2018, Sheriff Schmidt was not informed of any information, did not make any decision or provide any input regarding any inmate request, grievance or appeal including any related to Inmate Pozo's request for a Quran, attendance at Jumu'ah religious services or participation in Ramadan. (DPF ¶ 22). Sheriff Schmidt did not have any role in arranging religious leaders to volunteer at the Dodge County Detention Facility. (DPF ¶ 23).

Chaplain Bauer is a Chaplain who volunteers at the Dodge County Detention Facility. Chaplain Bauer is not an employee of Dodge County. (DPF ¶1). In 2018, Chaplain Bauer did not visit the Dodge County Detention Facility on a regular basis. Chaplain Bauer would meet with individual inmates for spiritual and emotional support upon request. (DPF ¶ 24). Chaplain Bauer also may meet with an inmate upon request from the jail administration if more information was needed to determine whether an inmate's particular request was based on

4

a sincere commitment to a recognized religion or set of religious beliefs. (DPF ¶ 25). As Chaplain, Chaplain Bauer would only provide information to the Dodge County Detention Facility Programs Corporal as to whether a particular inmate's religious request is based on a sincere commitment to a recognized religion or set of religious beliefs. (DPF ¶ 26). Chaplain Bauer did not have the authority to make decisions on whether an inmate could participate in religious services, should be provided religious items such as a Quran or could participate in Ramadan. (DPF ¶ 27).

Chaplain Bauer had one contact with Mr. Pozo on or about June 14, 2018, regarding metal hair clips. (DPF ¶ 28). The jail administration expressed a safety and security concern with an inmate who wore metal clips in his hair. (DPF ¶ 28). During that meeting with Chaplain Bauer, Inmate Pozo never raised any issue regarding Jumu'ah, a request for a Quran or Ramadan and actually reported he was perfectly happy with the conditions of confinement at the Dodge County Detention Facility. (DPF ¶¶ 29, 31).

If Inmate Pozo had raised other religious issues or concerns during that meeting, including a request for a Quran, to attend Jumu'ah services or to participate in Ramadan, Chaplain Bauer would have noted them in his email to the Programs Corporal. Chaplain Bauer also would have told Inmate Pozo to ask a jail officer or contact the Programs Corporal as he did not have any responsibility or role regarding these types of requests. (DPF ¶¶ 32-36). Chaplain Bauer had no role in planning, coordinating or administering programs or contacting religious leaders to conduct religious services at the Dodge County Detention Facility. (DPF ¶ 37).

Inmate requests regarding elements of any religion that the inmate believes are essential to his or her practice would be reviewed for legitimacy and approved by a Program Specialist or other deemed an expert on the subject. Guidance may be provided from religious staff or other expert on the subject, such as a Chaplain. (DPF ¶ 40). A Programs Specialist would forward a

5

recommendation to the Jail Administrator or designee with his or her findings. Religious programs did not discriminate based on race, national origin, color, sex, economic status, or political affiliation. All religious programming was provided within the framework of Facility safety and security guidelines. (DPF ¶ 40).

Religious books, including Bibles and Qurans are available in the Dodge County Detention Facility library for inmates to use or check out for their own personal use in their individual cells. All religious books are donated by the community or others and are not items that are purchased by Dodge County Detention Facility. (DPF ¶ 41). If an inmate has a religious book, such as a Quran, at the time of booking, that item would be inspected for safety and security concerns. If the religious book does not pose any concerns, the inmate would be allowed to keep that book in his or her cell. (DPF ¶ 42).

Inmates are not automatically given copies of religious books at the time of booking and may request a religious book such as a Bible or Quran from the jail library. (DPF ¶¶ 43-44). If a Muslim inmate requested to participate in Ramadan, arrangements would be made to allow that inmate to participate. If an inmate was not aware of when Ramadan took place, an inmate could request such information by asking an officer or by submitting an inmate request. Muslim inmates are not forced to participate in Ramadan. (DPF ¶¶ 46-47).

When an inmate requests to attend religious services or to speak with a religious leader, the Dodge County Detention Facility would determine if such religious services were currently being provided. If they are not, the jail would make contact with religious leaders to determine if he or she would be willing to volunteer at the jail. (DPF ¶¶ 48-49). If a Muslim inmate made a request for Jumu'ah services or for spiritual or emotional support by an Imam or other Islamic leader, attempts would be made to locate an Imam or religious leader who would be willing to volunteer their services at the Dodge County Detention Facility. (DPF ¶ 50). As Juneau,

6

Wisconsin is a small rural community it is difficult to locate religious leaders to come to the jail to offer services or to see inmates on an individual basis. (DPF ¶ 51).

In 2018, the Dodge County Detention Facility made regular attempts to contact a Rabbi for the Jewish inmates and an Imam for Muslim inmates to come to the jail to either conduct services or to meet with inmates on an individual basis. (DPF ¶ 51). In 2018, the Programs Corporal regularly worked with staff to try to locate and secure a volunteer to conduct Jumu'ah services. This included contacting Mosques and Imams located in the Milwaukee, Green Bay, Appleton and other areas as well as volunteers from other institutions. (DPF ¶ 52). Given the difficulty in locating certain religious leaders, such as an Imam, jail personnel would often question the inmate if he or she had any names of Muslim leaders who would be willing to conduct services. (DPF ¶ 54). The Dodge County Detention Facility also has had contact with other jails and prisons to try to locate an Imam to come to the Dodge County Detention Facility. Other jails or prisons in rural areas also have had a difficult time in locating an Imam to conduct religious services at the respective facilities. (DPF ¶ 55). Because there was not a volunteer available to lead Jumu'ah services, Jumu'ah was not offered during Inmate Pozo's incarceration in 2018. (DPF ¶¶ 53, 56).

While Jumu'ah services were not offered, inmates could practice Islam in other ways. This included participating in prayer individually in their cells. Islamic inmates also could exercise their religious beliefs and practices including religious diet requests, individual study, personal meditation, utilization of religious books and/or property, individual religious observation in their cells, and correspondence with Muslim religious leaders or other Muslim individuals. (DPF ¶ 57).

## I.  SUMMARY JUDGMENT STANDARD

Sheriff Dale J. Schmidt and Chaplain Timothy Bauer seek dismissal of Inmate Pozo's claims pursuant to Federal Rule of Civil Procedure 56(c).  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  Summary judgment is not a disfavored remedy, but rather, "an integral part of the federal rules as a whole which are designed to secure the just, the speedy and inexpensive determination of every action."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  A plaintiff cannot rest on the pleadings, but must demonstrate the existence of sufficient evidence that if believed by a jury, would support a verdict in his or her favor.  *Jelinak v. Greer*, 90 F.3d 242, 243-44 (7th Cir. 1996).  Absent a showing that a defendant may be liable, the defendant should not be required to undergo the considerable expense of preparing for trial.  *Anderson*, 477 U.S. at 256-57.

In ruling on a motion for summary judgment, the district court's role is to determine whether there is a genuine dispute as to a fact that is material and outcome determinative.  *See Vasquez v. Hernandez*, 60 F.3d 325, 328 (7th Cir. 1995).  It is not enough to raise a "metaphysical doubt" with respect to the existence of a genuine issue of triable fact.  *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Nor does the mere existence of a factual dispute defeat summary judgment.  Rather, the requirement is that there be a *genuine* issue of *material* fact.  *Anderson*, 477 U.S. at 248.  "The days are gone, if they ever existed, when the nonmoving party could sit back and simply poke holes in the moving party's summary judgment motion."  *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990).  The Court, when faced with a summary judgment motion, must decide whether the state of the evidence is such that, if the case were tried tomorrow, the plaintiff would have a fair chance of obtaining a verdict.  If not, the motion must be granted and the case dismissed.  *Palucki v. Sears Roebuck &*

8

*Co.*, 879 F.2d 1568, 1572-73 (7th Cir. 1989). In this case, Inmate Pozo cannot establish proof which would impose liability on the defendants. The failure of proof on the elements of plaintiff's claims makes all other facts immaterial. *Celotex*, 477 U.S. at 323.

## II.    INMATE POZO DID NOT EXHAUST HIS ADMINISTRATIVE REMEDIES

Inmate Pozo failed to exhaust the grievance procedure outlined by the Dodge County Detention Facility prior to filing suit. According to the Prison Litigation Reform Act, inmates must exhaust available internal grievance procedures before filing suit in Federal Court. 42 U.S.C. § 1997e(a). Exhaustion of the administrative remedies is mandatory. *See Booth v. Churner*, 532 U.S. 731, 739, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). The exhaustion requirement applies "to all prisoners seeking redress for prison circumstances and occurrences." *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L. Ed. 2d 12 (2002).

The Seventh Circuit Court of Appeals has held that "a suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits." *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 535 (7th Cir.1999); *see also Massey v. Helman*, 196 F.3d 727 (7th Cir.1999). The potential effectiveness of an administrative response bears no relationship to the statutory requirement that prisoners first attempt to obtain relief through administrative procedures. *Massey*, 196 F.3d at 733.

In order to adequately exhaust available administrative remedies such that suit is proper under the Prison Litigation Reform Act, an inmate must use "all steps the prison holds out" and must do so "properly." *Woodford v. Ngo*, 548 U.S. 81, 90, 126 S.Ct. 2378 (2006) (citing *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). To exhaust the administrative remedies, an inmate must file a grievance according to the procedures outlined by the institution. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). The requirements of the procedures must be

9

clear, *Carroll v. Yates*, 362 F.3d 984 (7th Cir. 2004), however, "[a]n inmate's perception that exhaustion would be futile does not excuse him from the exhaustion requirement." *Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005) (citing *Booth v. Churner*, 532 U.S. 731, 741 (2001)). The exhaustion requirement applies "to all prisoners seeking redress for prison circumstances and occurrences." *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L. Ed. 2d 12 (2002). Inmate Pozo failed to exhaust his administrative remedies with respect to his allowed to proceed in this case. As such, his claims must be dismissed.

Under the Dodge County Detention Facility's grievance procedure, an Inmate had several steps that must be followed in the grievance procedure. Inmates are informed of this procedure through the inmate handbook. (DPF). The Inmate Handbook contains the procedure in which inmates may file grievances. Under this procedure, a grievance form must be submitted within 5 days of the incident. The Shift Supervisor will investigate the grievance and provide a response within approximately 5 days of receipt of the grievance. The inmate may then file an appeal of the decision to the Deputy Jail Administrator within 2 days of receiving the response to the initial grievance. If unhappy with the Deputy Jail Administrator's response to the appeal, an inmate may then file an appeal to the Dodge County Jail Administrator. The decision of the Jail Administrator would constitute the final decision of the in-house grievance procedure. (DPF ¶¶ 7-9).

The claims at issue in this case relate to three issues: (1) Inmate Pozo claims he was not given a Quran, (2) Inmate Pozo claims he was not informed of or allowed to participate in Ramadan; and (3) Inmate Pozo claims he was not allowed to attend Jumu'ah services as the jail did not arrange for an Imam to volunteer at the jail facility. While Inmate Pozo filed various inmate requests and grievances while incarcerated at the Dodge County Detention Facility

10

relating to other unrelated issues, he never exhausted the administrative procedures regarding these specific claims.

First, Inmate Pozo never filed any inmate request, grievance or an appeal relating to any request for information he made as to the dates of Ramadan or that he would like to participate in Ramadan. (DPF ¶ 17). As such, this claim must be dismissed for failing to exhaust the Dodge County Detention Facility's grievance procedure.

Nor did Inmate Pozo ever exhaust the grievance procedure relating to his request for a Quran or to attend Jumu'ah religious services. Inmate Pozo submitted a grievance on June 8, 2018 relating to his requests for a Quran and for Jumu'ah services. A jail officer responded to this grievance indicating that an officer had provided plaintiff with a Quran. The officer further advised that there were no Jumu'ah services as the jail. (DPF ¶¶ 14-15). Inmate Pozo never filed any appeal with the Deputy Jail Administrator or an appeal with the Jail Administrator which were required steps under the grievance procedure. (DPF ¶ 16).

Inmate Pozo's failure to follow the full administrative process is fatal to his claims in this case. It is clear that "a suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits." *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 535 (7th Cir.1999). If allowed to bypass the procedures for requesting religious services and property items…, then the incentive that § 1997e(a) provides for prisoners to use this available administrative remedy will disappear. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir.2002). In effect, it would allow prisoners to circumvent or "thumb their noses at the specified procedures" for requesting an accommodation based on religious rights. *Id.* Such a position would also be contrary to the purpose of the exhaustion requirement articulated at 42 U.S.C. § 1997e(a): to "eliminate unwarranted federal-court interference with the administration of prisons," by "afford[ing]

11

corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Ngo,* 548 U.S. at 93 (quoting *Nussle,* 534 U.S. at 25); *see also Booth,* 532 U.S. at 739. Therefore, the Court must dismiss all of Inmate Pozo's claims.

## III. THE CLAIM AGAINST CHAPLAIN BAUER MUST BE DISMISSED AS HE DID NOT ACT UNDER COLOR OF LAW

Inmate Pozo has sued Chaplain Bauer based on allegations that he denied Inmate Pozo a Quran and refused to allow him to attend religious services or participate in Ramadan. *See* Amended Complaint, Dkt. 8. Chaplain Bauer did not act under color of state law and, therefore, cannot be liable in this case. "[I]n any § 1983 action the initial inquiry must focus on whether the two essential elements of a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt* v. *Taylor,* 451 U.S. 527, 535 (1981). Chaplain Bauer cannot be considered acting under the color of law when his role was limited, was primarily ecclesiastical functions, and when he did not have any authority to make decisions as to inmate religious requests. *Larry v. Goetz*, 575 F. Supp. 2d 965 (W.D. Wis. 2007); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 824 n. 12 (7th Cir. 2009), citing to *Montano v. Hedgepeth*, 120 F.3d 844, 851 (8th Cir. 1997); *Florer v. Congregation Pidyon Shevuyim*, 939 F.3d 916 (9th Cir. 2011); *Orafan v. Goord*, 411 F.Supp. 2d 153, 169 (N.D.N.Y. 2006). The Seventh Circuit has found that an individual does not act under color of law if that official or individual had no authority to act in the first place. *Wilson v. Price*, 624 F.3d 389, 393, citing to *Gibson v. City of Chicago*, 910 F.2d 1510, 1518 (7th Cir. 1990)("one cannot misuse power one does not possess).

Here, Chaplain Bauer is a volunteer that visits the Detention Facility periodically. Chaplain Bauer is not an employee of the jail and only comes to the jail upon the request of an

12

inmate or to obtain more information about a religious affiliation. He has no role or authority for making decisions as to religious requests including whether the jail should allow an inmate a religious book (such as a Quran). Nor is Chaplain Bauer responsible for arranging religious services or approving an inmate to participate in Ramadan. (DPF ¶¶ 2, 24, 34-37). Inmate Pozo cannot establish any facts that would show that Chaplain Bauer acted under color of law, subjecting him to liability under § 1983.

## IV. THE CLAIM AGAINST SHERIFF SCHMIDT AND CHAPLAIN BAUER MUST BE DISMISSED DUE TO LACK OF INVOVEMENT IN THE ALLEGED CONSTITUTIONAL VIOLAITONS

Inmate Pozo has sued Sheriff Schmidt and Chaplain Bauer based on allegations that they denied him a Quran, did not allow him to attend religious services and did not inform or allow him to attend Ramadan. *See* Amended Complaint, Dkt. 08. When considering whether Inmate Pozo is subject to § 1983 liability, courts follow a long-settled rule: "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996), *cert. denied*, 117 S. Ct. 1822 (1997), quoting *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994), *cert. denied*, 513 U.S. 1128 (1995*). See also Colbert v. City of Chi.*, 851 F.3d 649 (7th Cir. 2017)(quoting *Minix v. Canarecci*, 597 F.3d 834, 833 (7th Cir. 2010). Inmate Pozo cannot demonstrate that either defendant was personally involved in any alleged violations of the constitution or law. Here, Sheriff Schmidt did not have any involvement with Inmate Pozo. Chaplain Bauer did not have any involvement with Inmate Pozo regarding the alleged constitutional claims or even the authority to grant any requests for a Quran, attend Jumu'ah services or participate in Ramadan.

Inmate Pozo cannot establish liability on the basis that Sheriff Schmidt is the Dodge County Sheriff. A supervisor cannot be found liable merely for being a supervisor or the Sheriff.

13

Rather, for there to be liability, that supervisor must have participated in the alleged constitutional violation by participating in the alleged wrongful conduct. *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) is the seminal case addressing supervisory liability. In *Iqbal*, the United States Supreme Court held that a supervisor cannot be held liable for the constitutional wrongs of subordinate employees but can only be held liable when the supervisor engaged in the unconstitutional conduct. *Id.* at 1949. While the claims in *Iqbal* were evaluated under *Bivens*, the Court explained that the same legal standards apply in § 1983 actions.

Post-2009 decisions from the Seventh Circuit have recognized the stringent requirements set forth in *Iqbal* and have explained that supervisors may only be liable if they were "personally responsible for the deprivation of the constitutional rights." *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012). "To show personal involvement, the supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Id.* Absent allegations that a supervisory official personally caused, participated in, or had a reasonable chance to stop the alleged harm from occurring, a plaintiff fails to establish liability on a the part of that supervisory official. *George v. Smith,* 507 F.3d 605, 609–10 (7th Cir. 2007).

Here, Inmate Pozo's claim against Sheriff Schmidt cannot survive. Inmate Pozo cannot meet his evidentiary burden of showing that Sheriff Schmidt was personally involved in any alleged constitutional deprivation. Sheriff Schmidt had *no* involvement or contact with Inmate Pozo while he was incarcerated at the Dodge County Detention Facility. Sheriff Schmidt did not receive or review any inmate requests, grievances or appeals related to his request for a Quran, attendance at religious services or participation in Ramadan. (DPF ¶¶ 21-22.) Nor did he know about the alleged wrongdoing, facilitate it, approve it, condone it or turn a blind eye. There is no evidence that Sheriff Schmidt was aware of any request for a Quran, that he wanted to attend Jumu'ah services or that he

14

had inquired about the dates for Ramadan, much less that he approved any unconstitutional conduct. (DPF ¶ 22).

The same is true for Chaplain Bauer. In 2018, Chaplain Bauer's role at the Dodge County Detention Facility was to visit inmates upon request or to obtain more information regarding religious beliefs. (DPF ¶¶ 24-25). Chaplain Bauer only had one contact with Inmate Pozo on or about June 14, 2018 which was limited to a discussion about his metal hair clips. During that meeting with Chaplain Bauer, Inmate Pozo never raised any issue regarding Jumu'ah, a request for a Quran or Ramadan. (DPF ¶ 31). In fact, Inmate Pozo actually reported he was perfectly happy with the conditions of confinement at the Dodge County Detention Facility. (DPF ¶¶ 29, 31).

Nor did Chaplain Bauer have the authority to make decisions on whether an inmate could participate in religious services, should be provided religious items such as a Quran or could participate in Ramadan. (DPF ¶ 33). If Inmate Pozo did request a Quran, to attend Jumu'ah services, or to participate in Ramadan, Chaplain Bauer would have told him to ask a jail officer or contact the Programs Corporal as Chaplain Bauer did not have any responsibility or role regarding these types of requests. Nor did Chaplain Bauer have any authority or role in for coordinating religious services or contacting religious leaders to volunteer at the Dodge County Detention Facility. (DPF ¶¶ 33, 34-36). Finally, although Inmate Pozo claims that his requests were being denied by Chaplain Bauer, it is clear when looking at the record that Inmate Pozo's requests and grievances were filed through the jail process. Chaplain Bauer had no personal involvement with the jail process of requests and grievances, and therefore, he had no personal involvement or connection with any alleged violation of Inmate Pozo's rights.

As there is no evidence Sheriff Schmidt or Chaplain Bauer "engaged in unconstitutional conduct," or that either were personally involved in the alleged improper incidents (refusal to

15

give a Quran, arranging for religious services, informing him of Ramadan), all claims against Sheriff Schmidt and Chaplain Bauer must be dismissed.

## V. INMATE POZO'S FIRST AMENDMENT CLAIM AGAINST SHERIFF SCHMIDT AND CHAPLAN BAUER FAILS AS A MATTER OF LAW

The First Amendment "prohibits the state from imposing a 'substantial burden' on a 'central religious belief or practice.'" *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013) (quoting *Hernandez v. Comm'n of Internal Revenue*, 490 U.S. 680, 699 (1989)). Although an inmate has the right to practice his religion during his incarceration, this right may be restricted. *Ortiz v. Downey*, 561 F.3d 664, 669 (7th Cir. 2009); *Conyers v. Abitz*, 416, F.3d 580, 585 (7th Cir. 2005); *Tarpey v. Allen County*, 312 F.3d 895, 899 (7th Cir. 2002)("Prisons are only required to make reasonable efforts to provide an opportunity for religious practice."). "The correct standard…is whether a particular restriction "seriously" violates or contradicts an inmate's religious beliefs." *West v. Grams*, 607 Fed. App'x 561, 567 (7th Cir. 2015). "Prison officials may restrict inmate's ability to practice his faith so long as the restriction is reasonably related to a legitimate penological interest." *Ortiz*, 561 F.3d at 669 (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987). When evaluating whether a restriction on an inmate's ability to practice his religion is reasonably related to a legitimate penological interest, courts look at various factors including whether the restriction is related to a neutral government objective, whether the inmate has other means of practicing his faith, how the accommodation for the inmate impacts staff and others and whether there are other alternatives that could be utilized. *Id.*

Here, Inmate Pozo cannot establish his claim under the First Amendment. Inmate Pozo's ability to exercise his religion was not substantially burdened by the Dodge County Detention Facility as they never refused to provide him a Quran, attend Jumu'ah services or participate in

16

Ramadan. Rather, the record shows that reasonable efforts were made to provide for religious services as requested.

Inmate Pozo's first claim is that he was denied a Quran. The First Amendment claim forbids the government from interfering with an inmate's religious practice. It does not require a government to provide an inmate with the "accoutrements of his religion", especially if that inmate has avenues to obtain those items himself. *Kimberlin v. Dept. of Justice*, 318 F.3d 228, 238 (D.C. Cir. 2003); *Cutter v. Wilkinson*, 544 U.S. 709, 720, 125 S. Ct. 2113, 2121 (2005) (citing *Charles v. Verhagen,* 348 F.3d 601, 605 (7th Cir. 2003)). In other words, a government is not obligated to subsidize the items necessary for an inmate to practice his or her religion.

Here, religious books, including Bibles and Qurans were available in the Dodge County Detention Facility library for inmates to use or check out for their own personal use in their individual cells. This applied equally to all inmates at the jail, whether they are requesting a Quran or Bible. In other words, Christian inmates were not treated any differently and were not automatically given Bibles upon booking. (DPF ¶ 43). An inmate also had the option of bringing in their own religious book, which would be inspected for safety and security purposes, before being allowed in an inmate's cell. (DPF ¶ 42). Finally, Inmate Pozo also was informed that he had the option to purchase a Quran himself. (DPF ¶¶ 12, 44). There is no evidence that Inmate Pozo ever followed through with any of these options. In fact, Inmate Pozo did not raise any issue about the Quran until June of 2018 when he filed a grievance. When he did, jail officers took the steps that Inmate Pozo could have taken himself, which was to obtain a copy of the Quran from the library. (DPF ¶ 15). At no time was Inmate Pozo denied a Quran while incarcerated at the Dodge County Detention Center. (DPF ¶45).

Inmate Pozo's second issue is participation is Ramadan. While unclear, Inmate Pozo seems to suggest that he was not able to participate in Ramadan as he was never informed of

when it took place.  If a Muslim inmate makes a request to participate in Ramadan, arrangements would be made to allow that inmate to participate. If an inmate was not aware of when Ramadan took place, an inmate could request such information by asking an officer or by submitting an inmate request.  (DPF ¶¶ 46-47).  Inmates are informed through the Inmate Handbook that if they have any questions or requests regarding the practice of their own faith, they can make an Inmate Request to Programs. (DPF ¶ 58).  All inmate requests are preserved in each inmate's jail file.  (DPF ¶ 11).  Inmate Pozo cannot establish a violation of his First Amendment rights as he never made *any* request for information about Ramadan or any request to participate in Ramadan.  Muslim inmates are not forced to participate in Ramadan, even if they identify as Muslim.  (DPF ¶¶ 17, 47).

Finally, the defendants never violated Inmate Pozo's rights to participate in Jumu'ah services.  A jail official only is liable for intentional discrimination under the free exercise clause of the First Amendment.  Here, there is no evidence that the Dodge County Detention Center intentionally discriminated against Inmate Pozo.  Furthermore, the reason Jumu'ah services were not offered was because an Imam could not be located to conduct the Friday services. (DPF ¶¶ 15, 56).  Finally, it is undisputed that neither the Sheriff nor the Chaplain were responsible or had any involvement in arranging for religious worship services for inmates.  (DPF ¶¶ 19-37).

When an inmate requests to attend religious services or to speak with a religious leader, the Dodge County Detention Facility would determine if such religious services were currently being provided.  If they were not, the jail would make contact with appropriate religious leaders to determine if he or she would be willing to volunteer at the jail.  (DPF ¶¶ 48-49).  If a Muslim inmate made a request for Jumu'ah services or for spiritual or emotional support by an Imam or other Islamic leader, attempts would be made to locate an Imam or religious leader who would be willing to volunteer their services at the Dodge County Detention Facility.  (DPF ¶ 50).  As

18

Juneau, Wisconsin is a small rural community it was difficult to locate religious leaders to come to the jail to offer services or to see inmates on an individual basis. (DPF ¶ 51).

In 2018, the record shows that the Dodge County Programs Corporal and his staff worked diligently to locate an Imam to lead Jumu'ah services, without success. (DPF ¶¶ 52-53). In trying to locate an Imam, contacts were made with Imams and other Islamic religious leaders in the area and outside of the area. In addition, contacts were made to other institutions for leads to locate a possible Imam. (DPF ¶¶ 51-55). Inmates also were asked if they knew any Imam who would be willing to conduct services at the jail. (DPF ¶ 54). Despite all of these efforts, an Imam could not be located to conduct Jumu'ah services in 2018 while Inmate Pozo was incarcerated at the Dodge County Detention Center.

It is unclear what else the Detention Facility could have done given the religious leaders' unwillingness to offer their time at the jail. There is no requirement for a jail has to hire a Muslim chaplain to lead Jumu'ah services. "Prisons need not provide every religious sect or group within a prison with identical facilities or personnel and need not employ chaplains representing every faith among the inmate population." *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011). "A plaintiff doesn't state a cause of action under the First Amendment merely because a prison allocates a disproportionately smaller amount of its religious budget to certain sects or provides clergy for one religion and not another." *Id*. at 718-19.

While Jumu'ah services could not be offered, inmates, including Inmate Pozo, were able to practice Islam in other ways. This included participating in prayer individually in their cells. Islamic inmates also could exercise their religious beliefs and practices including religious diet requests, individual study, personal meditation, utilization of religious books and/or property, individual religious observation in their cells, and correspondence with Muslim religious leaders or other Muslim individuals. (DPF ¶ 57). Since Inmate Pozo had the ability to

19

practice his own religion and the Dodge County Detention Center did not do anything that substantially impacted his ability to practice his religion, Inmate Pozo's First Amendment claim must be dismissed.

## VI.     THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Even if there is a question regarding Inmate Pozo's First Amendment claim, the defendants are entitled to qualified immunity and dismissal from this suit.  The qualified immunity doctrine protects government officials from civil liability when they perform discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "Put simply," says the Supreme Court, "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  This protection affords public officials leeway to make reasonable mistakes without the fear that they will be subjected to personal liability.  *Harlow*, 457 U.S. at 814.  Once the defense is raised, the plaintiff bears the burden to defeat it.  *Weinmann v. McClone*, 787 F.3d 444, 450 (7th Cir. 2015).

Inmate Pozo must satisfy a two-step inquiry to overcome Defendants' assertion of qualified immunity.  First, Inmate Pozo must show facts which, if believed, amount to an actual violation of his constitutional rights.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Second, Inmate Pozo must show that his right was "clearly established" at the time of the alleged violation.  *Id.*  Whether the law was "clearly established" turns on the "objective legal reasonableness of the action" given the contemporaneous legal rules.  *Wilson v. Layne*, 526 U.S. 603, 614 (1999).  That said, qualified immunity protects prison officials who make reasonable errors in applying even clearly established law.  *Vinning-E v. Evans*, 657 F.3d 591, 594 (7th Cir. 2011)(citing *Malley*, 475 U.S. at 341).  Thus, a defendant government official is entitled to qualified immunity for unconstitutional conduct so

20

long as there could be a reasonable, albeit mistaken, belief about the legality of his conduct. *Saucier*, 533 U.S. at 205-06.

Here, qualified immunity shields the defendants from liability because Inmate Pozo cannot meet his burden of showing facts supporting a viable constitutional claim. With respect to the first prong of his First Amendment Claim, the record establishes that Inmate Pozo failed to establish that the actions taken by the two defendants in this case imposed a substantial burden on his religious beliefs, as discussed above. Thus, the Court need not reach the second step of the analysis.

Nevertheless, it is clear Inmate Pozo cannot satisfy the second prong: whether the right was "clearly established" at the time of the incident. To be clearly established, the right "must be sufficiently clear that every reasonably official would have understood what he is doing violates that right." *Reichle v. Howards*, 132 S. Ct. 20188, 2093 (2012. This is a high bar to establish. *Kramer v. Pollard*, 497 F. App'x 639, 642 (7th Cir. 2012). For Inmate Pozo to defeat a qualified immunity defense, he needs to show that "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, (2011).

The inquiry into whether a right is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Borello v. Allison*, 446 F.3d 742, 750 (7th Cir. 2006) (citing *Brosseu v. Haugen*, 543 U.S. 194 (2004)). "It is insufficient for a plaintiff simply to point out a recognized constitutional right and claim that the right has been violated." *Id.* Further, "[a] right is not clearly established if officers of reasonable competence could disagree on the issue." *Ulichny v. Merton Comm. Sch. Dist.*, 249 F.3d 686, 706 (7th Cir. 2001).

When the defense of qualified immunity is raised, the plaintiff bears the burden of proving the existence of a clearly established right. *Kernats v. O'Sullivan*, 35 F.3d 1171, 1176

(7th Cir. 1994). Further, a plaintiff bears the burden of showing that the alleged violation was clearly established "before the defendants acted or failed to act." *Rice v. Burk*, 999 F.2d 1172, 1174 (7th Cir. 1993). The plaintiff must demonstrate the existence of a clearly established right by identifying a closely analogous case that had decided that the conduct was forbidden. *Forman v. Richard Police Department*, 104 F.3d 950, 958 (7th Cir. 1997). In determining whether the right alleged to have been violated was "clearly established," a constitutional right must have been identified in a particularized sense with regard to the circumstances of the alleged violation. *Warlick v. Cross*, 969 F.2d 303, 309 (7th Cir. 1992).

There is no clearly established First Amendment right to participate in services when an outside volunteer cannot be located. In other words, there is simply no analogous case that would put the defendants on notice that the First Amendment required jails to offer services even when a volunteer could not be located to lead that service. Inmate Pozo cannot meet his burden of identifying that any right claimed is closely established. Dodge County Detention Facility does not offer Jumu'ah because it is unable to locate an Imam willing to volunteer to lead it, nothing more.

Nor can Inmate Pozo show any clearly established right at the time of the incident to receive a free holy Bible or Quran or to be advised regarding Ramadan when no request had ever been made. In fact, as mentioned earlier, a jail is not required to pay for an inmate's devotional accessories, including holy texts. *Cutter v. Wilkinson*, 544 U.S. 709, 720, 125 S. Ct. 2113, 2121 (2005) (citing *Charles v. Verhagen,* 348 F.3d 601, 605 (7th Cir. 2003)). Finally, there is no case that identifies a "clearly established" right to be advised individually concerning religious holidays. If an inmate has a question about when Ramadan starts or wants to participate in Ramadan, he can make such a request to the jail. The record shows that Inmate Pozo never made any such request relating to Ramadan. As Inmate Pozo cannot show that any of these claims

22

relate to a "clearly established" right, the Defendants are entitled to qualified immunity and these claims must be dismissed.

## CONCLUSION

Based upon the foregoing arguments and authorities, the defendants respectfully requested that this Court grant Sheriff Dale J. Schmidt and Chaplain Timothy Bauer's motion for summary judgment dismissing Inmate Pozo's Amended Complaint upon its merits, together with the costs and disbursements of this action.

Dated this __23rd__ day of September, 2019.

BY: __s/ Amy J. Doyle_____
AMY J. DOYLE
State Bar No. 1001333
JOSE A. CASTRO
State Bar No. 1098146
Attorneys for Defendants Sheriff Dale J. Schmidt and Chaplain Timothy Bauer
CRIVELLO CARLSON, S.C.
710 N. Plankinton Avenue, Suite 500
Milwaukee, WI 53203
**Phone**:414-271-7722
**Fax**:   414-271-4438
**Email**:      adoyle@crivellocarlson.com
                jcastro@crivellocarlson.com