UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RODOSVALDO C. POZO,

        Plaintiff,

v.                                        **Case No. 2:18-cv-01486-WED**

SHERIFF DALE J. SCHMIDT,
CHAPLAIN TIMOTHY BAUER,
DR. DEB and
RN TAMMY,

        Defendants.

---

**SHERIFF DALE J. SCHMIDT AND CHAPLAIN TIMOTHY BAUER'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

---

Sheriff Dale J. Schmidt and Chaplain Timothy Bauer, by their attorneys, Crivello Carlson, S.C., submit the following brief in opposition of Plaintiff's motion for summary judgment.

## I.    INMATE POZO HAS NOT ESTABLISHED THAT HE IS ENTITLED TO SUMMARY JUDGMENT

### A.    Inmate Pozo Failed to Comply With the Rules Regarding Summary Judgment

This Court should deny Inmate Pozo's Summary Judgment Motion because of his serious failures to comply with Rule 56 and Civil Local Rule 56(b)(1)(C). "[I]t is well established that pro se litigants are not excused from compliance with procedural rules." *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008) (citing *McNeil v. U.S.*, 508 U.S. 106, 113 (1993)); *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001) (dismissing pro se litigant's appeal for failure to comply with Rule 28 of the Federal Rules of Appellate Procedure, which requires

briefs to contain arguments consisting of more than generalized assertions of error); *Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings.").

For instance, in *Coleman v. Goodwill Industries of Southeastern Wisconsin, Inc.*, the Seventh Circuit affirmed this Court's grant of summary judgment where the *pro se* plaintiff, Coleman, failed to comply with local rules governing a non-movant's response to a motion for summary judgment. 423 F. App'x 642, 643 (7th Cir. 2011). The Seventh Circuit rejected Coleman's argument that her memoranda and affidavits submitted in opposition to summary judgment should have been construed as complying with Civil Local Rule 56, reasoning that it could not "conclude that the district court's decision to adhere strictly to the local rules—and require Coleman to contest [the defendant's] proposed facts in the manner set forth by local rule—was an abuse of discretion." *Id.*

Similarly, in this case Inmate Pozo's failures are pervasive, and include his total failure to set forth any proposed facts and to cite to any evidentiary material in support of the arguments he makes in his brief. Inmate Pozo has solely stated that there is no issue of material fact and that the law is on his side, and therefore he deserves judgment in his favor. Inmate Pozo has cited no facts in compliance with Civil L.R. 56(b)(1)(C) to support this position. Instead, Inmate Pozo filed a five-page narrative affidavit that is largely speculative, conclusory, hearsay, or not based on personal knowledge, failing to comply with Fed. R. Civ. P. 56(c). *See Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("A district court does not abuse its discretion when, in

2

imposing a penalty for a litigant's non-compliance with Local Rule[s] . . . the court chooses to ignore and not consider the additional facts that a litigant has proposed."). Therefore, the Court should deny Inmate Pozo's motion for summary judgment for his failure to comply with Fed. R. Civ. P. 56 and Civil Local Rule 56(b)(1)(C).

### B. Inmate Pozo's Submissions Fails to Establish He is Entitled to Summary Judgment

Furthermore, Inmate Pozo's reliance and restatement of complaint allegations is not enough to establish summary judgment. Fed. R. Civ. P. 56(c) states "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law," summary judgment shall be granted. *Local 1545, United Mine Workers of America v. Inland Steel Coal Co.,* 876 F.2d 1288, 1292 (7th Cir.1989); *Board of Regents v. Mussallem,* 94 Wis.2d 657, 289 N.W.2d 801, 808 (1980)(citing *Taterka v. Ford Motor Co.,* 86 Wis.2d 140, 271 N.W.2d 653 (1978)). The moving party bears the burden of establishing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Board of Regents,* 289 N.W.2d at 809 (1980); *see Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970); *see also Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553 (the moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue); *see also Rollins Burdick Hunter of Wisconsin, Inc. v. Hamilton,* 101 Wis.2d 460, 304 N.W.2d 752, 757 (1981) ("[t]he moving party must establish a record sufficient to demonstrate to the satisfaction of the Court that there is no triable issue of material fact on any issue presented").

3

Inmate Pozo has cited no facts, laws, or cases that support his position regarding summary judgment. In other words, Inmate Pozo's regurgitation of the allegations against the Defendants in his motion is not sufficient to establish liability. *Jelinak v. Greer*, 90 F.3d 242, 243-44 (7th Cir. 1996) (instructing that the plaintiff cannot rest upon merely the allegations in his complaint to survive summary judgment). Therefore, this Court should deny Inmate Pozo's motion as it is not supported by any admissible evidence and fails to establish that he is entitled to summary judgment.

## II.    INMATE POZO'S NEW ALLEGATIONS MUST BE DISREGARDED BY THIS COURT

Any claims outside of Inmate Pozo's First Amendment claims regarding the Quran, participation in Ramadan, and participation in Jumu'ah services should not be considered. A court's screening determination is to be made based on a review of the complaint and any attached documents that are deemed incorporated into it. *See Sanders v. Bertrand*, 72 Fed. Appx. 442, *2 (7th Cir. 2003). Further, before subjecting defendants to "paranoid pro se litigation … alleging … a vast, encompassing conspiracy," the plaintiff must meet a "high standard of plausibility" at the screening stage. *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009).

The Court's January 9, 2019, screening order allowed Inmate Pozo to proceed on a claim against Sheriff Schmidt and Chaplain Bauer regarding an alleged violation of Inmate Pozo's First Amendment rights relating to (1) not providing him with a Quran; (2) now allowing him to attend Jumu'ah services and (3) not being told of Ramadan. *See* Amended Complaint, Dkt. 8; Screening Order, Dkt. 9. However, in his motion for summary judgment, Inmate Pozo makes new claims and allegations that were never included in his Amended Complaint. In   particular,

4

Inmate Pozo now makes allegation about not being allowed to wear a Kufi. (See Dkt. No. 25 p. 3). The Defendants are not able to defend against new or different allegations made for the first time during summary judgment especially after discovery has closed. A party cannot amend his complaint through the summary judgment briefing process. *Speer v. Rand McNally & Co.*, 123 F.3d 658, 665 (7th Cir. 1993). Because any claim or allegation relating to the Kufi is new or different than those in the Amended Complaint, it should be disregarded by this Court.

## III. INMATE POZO DID NOT EXHAUST HIS ADMINISTRATIVE REMEDIES WITHIN THE DODGE COUNTY DETENTION FACILITY PRIOR TO FILING SUIT.

According to the Prison Litigation Reform Act, inmates must exhaust available internal grievance procedures before filing suit in Federal Court. 42 U.S.C. § 1997e(a). Exhaustion of the administrative remedies is mandatory. See *Booth v. Churner*, 532 U.S. 731, 739, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). The exhaustion requirement applies "to all prisoners seeking redress for prison circumstances and occurrences." *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L. Ed. 2d 12 (2002).

The Seventh Circuit Court of Appeals has held that "a suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits." *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 535 (7th Cir.1999); *see also Massey v. Helman*, 196 F.3d 727 (7th Cir.1999). The potential effectiveness of an administrative response bears no relationship to the statutory requirement that a prisoners first attempt to obtain relief through administrative procedures. *Massey*, 196 F.3d at 733.

5

In order to adequately exhaust available administrative remedies such that suit is proper under the Prison Litigation Reform Act, an inmate must use "all steps the prison holds out" and must do so "properly." *Woodford v. Ngo*, 548 U.S. 81, 90, 126 S.Ct. 2378 (2006) (citing *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). To exhaust the administrative remedies, an inmate must file a grievance according to the procedures outlined by the institution. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). The requirements of the procedures must be clear, *Carroll v. Yates*, 362 F.3d 984 (7th Cir. 2004), however, "[a]n inmate's perception that exhaustion would be futile does not excuse him from the exhaustion requirement." *Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005) (citing *Booth v. Churner*, 532 U.S. 731, 741 (2001)). The exhaustion requirement applies "to all prisoners seeking redress for prison circumstances and occurrences." *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L. Ed. 2d 12 (2002).

Under the Dodge County Detention Facility's grievance procedure, an Inmate had several steps that must be followed in the grievance procedure. Inmates are informed of this procedure through the inmate handbook. (DPF ¶¶ 5-6). The Inmate Handbook contains the procedure in which inmates may file grievances. Under this procedure, a grievance form must be submitted within 5 days of the incident. The Shift Supervisor will investigate the grievance and provide a response within approximately 5 days of receipt of the grievance. The inmate may then file an appeal of the decision to the Deputy Jail Administrator within 2 days of receiving the response to the initial grievance. If unhappy with the Deputy Jail Administrator's response to the appeal, an inmate may then file an appeal to the Dodge County Jail Administrator. The decision of the Jail Administrator would constitute the final decision of the in-house grievance procedure. (DPF ¶¶ 7-9).

6

First, Inmate Pozo never exhausted his administrative remedies relating to Ramadan. (DPF ¶¶ 17-18, 31, 33, 35). Inmate Pozo's arguments and exhibits confirm that he never filed any inmate request, grievance or an appeal relating to any request for information he made as to the dates of Ramadan or that he would like to participate in Ramadan. (DPF ¶ 17). As such, this claim must be dismissed for failing to exhaust the Dodge County Detention Facility's grievance procedure.

Nor does or can Inmate Pozo show that he ever exhausted the grievance procedure relating to his request for a Quran or to attend Jumu'ah religious services. Inmate Pozo submitted a grievance on June 8, 2018 relating to his requests for a Quran and for Jumu'ah services. A jail officer responded to this grievance indicating that an officer had provided Inmate Pozo with a Quran. The officer further advised that there were no Jumu'ah services as the jail. (DPF ¶¶ 14-15). Inmate Pozo's motion and documents makes clear that he never filed any appeal with the Deputy Jail Administrator or an appeal with the Jail Administrator which were required steps under the grievance procedure. (DPF ¶ 16).

Inmate Pozo failed to exhaust his administrative remedies with respect to his claims allowed to proceed in this case. As such, the Court must deny Inmate Pozo's motion for summary judgment.

## IV.   POZO FAILED TO ESTABLISH LIABILITY AGAINST THE DEFENDANTS FOR ANY FIRST AMENDMENT VIOLATION

### A.   Chaplain Bauer Did Not Act Under Color Of Law

Inmate Pozo argues that he spoke personally with Chaplain Bauer and that this contributed to Inmate Pozo's rights being allegedly violated. Inmate Pozo argues that Chaplain Bauer is liable in these circumstances under § 1983, and that judgment must be entered in his

7

favor. However, Inmate Pozo has shown no facts to support a claim that Chaplain Bauer acted under color of law, a fact which is necessary for Chaplain Bauer to be found liable under § 1983. "[I]n any § 1983 action the initial inquiry must focus on whether the two essential elements of a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt* v. *Taylor,* 451 U.S. 527, 535 (1981).

Chaplain Bauer cannot be considered acting under the color of law when his role was limited, was primarily ecclesiastical functions, and when he did not have any authority to make decisions as to inmate religious requests. *Larry v. Goetz*, 575 F. Supp. 2d 965 (W.D. Wis. 2007); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 824 n. 12 (7th Cir. 2009), citing to *Montano v. Hedgepeth*, 120 F.3d 844, 851 (8th Cir. 1997); *Florer v. Congregation Pidyon Shevuyim*, 939 F.3d 916 (9th Cir. 2011); *Orafan v. Goord*, 411 F.Supp. 2d 153, 169 (N.D.N.Y. 2006). The Seventh Circuit has found that an individual does not act under color of law if that official or individual had no authority to act in the first place. *Wilson v. Price*, 624 F.3d 389, 393, citing to *Gibson v. City of Chicago*, 910 F.2d 1510, 1518 (7th Cir. 1990)("one cannot misuse power one does not possess).

Here, Chaplain Bauer is a volunteer that visits the Detention Facility periodically. Chaplain Bauer is not an employee of the jail and only comes to the jail upon the request of an inmate or to obtain more information about a religious affiliation. He has no role or authority for making decisions as to religious requests including whether the jail should allow an inmate a religious book (such as a Quran). Nor is Chaplain Bauer responsible for arranging religious

8

services or approving an inmate to participate in Ramadan. (DPF ¶¶ 2, 24, 34-37). If Inmate Pozo did request a Quran, to attend Jumu'ah services, or to participate in Ramadan, Chaplain Bauer would have told him to ask a jail officer or contact the Programs Corporal as Chaplain Bauer did not have any responsibility or role regarding these types of requests. (DPF ¶ 33). Finally, although Inmate Pozo claims that his requests were being denied by Chaplain Bauer, it is clear when looking at the record that Inmate Pozo's requests and grievances were filed through the jail process. (DPF ¶¶ 12, 14-15). Chaplain Bauer had no personal involvement with the jail process of requests and grievances, and therefore, he had no personal involvement or official authority to act with regard to any alleged violation of Inmate Pozo's rights. (DPF ¶ 27).

Inmate Pozo cannot establish any facts that would show that Chaplain Bauer acted under color of law, subjecting him to liability under § 1983. Therefore, Inmate Pozo cannot succeed on his claim that Chaplain Bauer is liable for the alleged violation of Inmate Pozo's First Amendment rights must be dismissed.

### B. Sheriff Schmidt Had No Personal Involvement In The Alleged Constitutional Violations

Inmate Pozo argues that judgment should be entered against Sherriff Schmidt because "The United States' Constitution dictates that no institution(s) have the power to discriminate against any personal's (sic) religious believe." However, Inmate Pozo introduces no facts supporting the claim that Sherriff Schmidt had any involvement with or did discriminate against Inmate Pozo's religious beliefs. This is fatal to his claim against Sherriff Schmidt.

"Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996), *cert. denied*, 117

9

S. Ct. 1822 (1997), quoting *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994), *cert. denied*, 513 U.S. 1128 (1995*). See also Colbert v. City of Chi.*, 851 F.3d 649 (7th Cir. 2017)(quoting *Minix v. Canarecci*, 597 F.3d 834, 833 (7th Cir. 2010).

Inmate Pozo cannot establish liability solely on the basis that Sheriff Schmidt is the Dodge County Sheriff. A supervisor cannot be found liable merely for being a supervisor or the Sheriff. Rather, for there to be liability, that supervisor must have participated in the alleged constitutional violation by participating in the alleged wrongful conduct. *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) is the seminal case addressing supervisory liability. In *Iqbal*, the United States Supreme Court held that a supervisor cannot be held liable for the constitutional wrongs of subordinate employees but can only be held liable when the supervisor engaged in the unconstitutional conduct. *Id.* at 1949. While the claims in *Iqbal* were evaluated under *Bivens*, the Court explained that the same legal standards apply in § 1983 actions.

Post-2009 decisions from the Seventh Circuit have recognized the stringent requirements set forth in *Iqbal* and have explained that supervisors may only be liable if they were "personally responsible for the deprivation of the constitutional rights." *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012). "To show personal involvement, the supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Id.* Absent allegations that a supervisory official personally caused, participated in, or had a reasonable chance to stop the alleged harm from occurring, a plaintiff fails to establish liability on a the part of that supervisory official. *George v. Smith,* 507 F.3d 605, 609–10 (7th Cir. 2007).

10

Here, the record is clear that Sheriff Schmidt had *no* involvement or contact with Inmate Pozo while he was incarcerated at the Dodge County Detention Facility. Inmate Pozo has introduced no evidence to refute this. Sheriff Schmidt did not receive or review any inmate requests, grievances or appeals related to his request for a Quran, attendance at religious services or participation in Ramadan. (DPF ¶¶ 21-22). Nor did he know about the alleged wrongdoing, facilitate it, approve it, condone it or turn a blind eye. There is no evidence that Sheriff Schmidt was aware of any request for a Quran, that Inmate Pozo wanted to attend Jumu'ah services or that Inmate Pozo had inquired about the dates for Ramadan, much less that Sherriff Schmidt approved any unconstitutional conduct. (DPF ¶ 22). Therefore, Inmate Pozo cannot succeed on his claim that Sherriff Schmidt violated Inmate Pozo's First Amendment right.

## V. INMATE POZO'S FIRST AMENDMENT CLAIM AGAINST SHERIFF SCHMIDT AND CHAPLAN BAUER FAILS AS A MATTER OF LAW

Inmate Pozo argues that "The United States' Constitution dictates that no institution(s) have the power to discriminate against any personal's religious believe." Inmate Pozo argues that the law is clear on its face and there exists no genuine issue as to a material fact in this case. Therefore, Inmate Pozo argues that summary judgment be entered in his favor.

However, the law is clear that the First Amendment "prohibits the state from imposing a 'substantial burden' on a 'central religious belief or practice.'" *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013) (quoting *Hernandez v. Comm'n of Internal Revenue*, 490 U.S. 680, 699 (1989)). Although an inmate has the right to practice his religion during his incarceration, this right may be restricted. *Ortiz v. Downey*, 561 F.3d 664, 669 (7th Cir. 2009); *Conyers v. Abitz*, 416, F.3d 580, 585 (7th Cir. 2005); *Tarpey v. Allen County*, 312 F.3d 895, 899 (7th Cir. 2002)("Prisons are only required to make reasonable efforts to provide an opportunity for

11

religious practice."). "The correct standard…is whether a particular restriction "seriously" violates or contradicts an inmate's religious beliefs." *West v. Grams*, 607 Fed. App'x 561, 567 (7th Cir. 2015). "Prison officials may restrict inmate's ability to practice his faith so long as the restriction is reasonably related to a legitimate penological interest." *Ortiz*, 561 F.3d at 669 (citing to *Turner v. Safley*, 482 U.S. 78, 89 (1987). When evaluating whether a restriction on an inmate's ability to practice his religion is reasonably related to a legitimate penological interest, courts look at various factors including whether the restriction is related to a neutral government objective, whether the inmate has other means of practicing his faith, how the accommodation for the inmate impacts staff and others and whether there are other alternatives that could be utilized. *Id*.

Here, Inmate Pozo has shown no facts to support his claim under the First Amendment. Inmate Pozo's ability to exercise his religion was not substantially burdened by the Dodge County Detention Facility as they never refused to provide him a Quran, attend Jumu'ah services or participate in Ramadan. Rather, the record shows that reasonable efforts were made to provide for religious services as requested.

Inmate Pozo's first claim is that he was denied a Quran. The First Amendment claim forbids the government from interfering with an inmate's religious practice. It does not require a government to provide an inmate with the "accoutrements of his religion", especially if that inmate has avenues to obtain those items himself. *Kimberlin v. Dept. of Justice*, 318 F.3d 228, 238 (D.C. Cir. 2003); *Cutter v. Wilkinson*, 544 U.S. 709, 720, 125 S. Ct. 2113, 2121 (2005) (citing *Charles v. Verhagen,* 348 F.3d 601, 605 (7th Cir. 2003)). In other words, a government is not obligated to subsidize the items necessary for an inmate to practice his or her religion.

12

Here, religious books, including Bibles and Qurans were available in the Dodge County Detention Facility library for inmates to use or check out for their own personal use in their individual cells. This applied equally to all inmates at the jail, whether they are requesting a Quran or Bible. In other words, Christian inmates were not treated any differently and were not automatically given Bibles upon booking. (DPF ¶ 43). An inmate also had the option of bringing in their own religious book, which would be inspected for safety and security purposes, before being allowed in an inmate's cell. (DPF ¶ 42). Finally, Inmate Pozo also was informed that he had the option to purchase a Quran himself. (DPF ¶¶ 12, 44). There is no evidence that Inmate Pozo ever followed through with any of these options. In fact, Inmate Pozo did not raise any issue about the Quran until June of 2018 when he filed a grievance. When he did, jail officers took the steps that Inmate Pozo could have taken himself, which was to obtain a copy of the Quran from the library. (DPF ¶ 15). At no time was Inmate Pozo denied a Quran while incarcerated at the Dodge County Detention Center, contrary to Inmate Pozo's claim in his affidavit. (DPF ¶45).

Inmate Pozo's second issue is participation is Ramadan. Inmate Pozo argues that he was denied the fast during Holy Ramadan. However, the record is clear that Dodge County Detention Facility never denied Inmate Pozo participation in Ramadan. Rather, Inmate Pozo never requested participation in Ramadan. If a Muslim inmate makes a request to participate in Ramadan, arrangements would be made to allow that inmate to participate. If an inmate was not aware of when Ramadan took place, an inmate could request such information by asking an officer or by submitting an inmate request. (DPF ¶¶ 46-47). Inmates are informed through the Inmate Handbook that if they have any questions or requests regarding the practice of their own

13

faith, they can make an Inmate Request to Programs. (DPF ¶ 58). All inmate requests are preserved in each inmate's jail file. (DPF ¶ 11). Inmate Pozo cannot establish a violation of his First Amendment rights as he never made *any* request for information about Ramadan or any request to participate in Ramadan. Muslim inmates are not forced to participate in Ramadan, even if they identify as Muslim. (DPF ¶¶ 17, 47).

Finally, the Defendants never violated Inmate Pozo's rights to participate in Jumu'ah services. Inmate Pozo argues that "all other detentions for the immigrants… allow every Friday at 1 o'clock the Jumu'ah service." However, the record is clear that Inmate Pozo cannot support that argument with evidence and Dodge County Detention Facility had a legitimate penological reason for not offering Jumu'ah service.

A jail official only is liable for intentional discrimination under the free exercise clause of the First Amendment. Here, there is no evidence that Defendants intentionally discriminated against Inmate Pozo. Furthermore, the reason Jumu'ah services were not offered was because an Imam could not be located to conduct the Friday services. (DPF ¶¶ 15, 56). Finally, it is undisputed that neither the Sheriff nor the Chaplain were responsible or had any involvement in arranging for religious worship services for inmates. (DPF ¶¶ 19-37).

When an inmate requests to attend religious services or to speak with a religious leader, the Dodge County Detention Facility would determine if such religious services were currently being provided. If they were not, the jail would make contact with appropriate religious leaders to determine if he or she would be willing to offer services at the jail. (DPF ¶¶ 48-49). If a Muslim inmate made a request for Jumu'ah services or for spiritual or emotional support by an Imam or other Islamic leader, attempts would be made to locate an Imam or religious leader who

14

would be willing to offer their services at the Dodge County Detention Facility. (DPF ¶ 50). As Juneau, Wisconsin is a small rural community it was difficult to locate religious leaders to come to the jail to offer services or to see inmates on an individual basis. (DPF ¶ 51).

In 2018, the record shows that the Dodge County Programs Corporal and his staff worked diligently to locate an Imam to lead Jumu'ah services, without success. (DPF ¶¶ 52-53). In trying to locate an Imam, contacts were made with Imams and other Islamic religious leaders in the area and outside of the area. In addition, contacts were made to other institutions for leads to locate a possible Imam. (DPF ¶¶ 51-55). Inmates also were asked if they knew any Imam who would be willing to conduct services at the jail. (DPF ¶ 54). Despite all of these efforts, an Imam could not be located to conduct Jumu'ah services in 2018 while Inmate Pozo was incarcerated at the Dodge County Detention Center.

It is unclear what else the Detention Facility could have done given the religious leaders' unwillingness to offer their time at the jail. There is no requirement for a jail has to hire a Muslim chaplain to lead Jumu'ah services. "Prisons need not provide every religious sect or group within a prison with identical facilities or personnel and need not employ chaplains representing every faith among the inmate population." *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011). "A plaintiff doesn't state a cause of action under the First Amendment merely because a prison allocates a disproportionately smaller amount of its religious budget to certain sects or provides clergy for one religion and not another." *Id*. at 718-19.

While Jumu'ah services could not be offered, inmates, including Inmate Pozo, were able to practice Islam in other ways. This included participating in prayer individually in their cells. Islamic inmates also could exercise their religious beliefs and practices including religious

diet requests, individual study, personal meditation, utilization of religious books and/or property, individual religious observation in their cells, and correspondence with Muslim religious leaders or other Muslim individuals. (DPF ¶ 57). Since Inmate Pozo had the ability to practice his own religion and the Defendants did nothing to substantially impact his ability to practice his religion, Inmate Pozo's First Amendment claim must be dismissed.

## VI.  THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Even if there is a question regarding Inmate Pozo's First Amendment claim, Governmental officials performing discretionary functions are shielded from liability so far as their conduct does not violate any clearly established constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1992); *Hinnen v. Kelly*, 992 F.2d 140, 142 (7th Cir. 1993). Officials are entitled to immunity if, when they acted, they "reasonably could have believed that [their] action[s] did not violate a clearly established law." *Cham v. Wodnick*, 123 F.3d 1005, 1008 (7th Cir. 1997), *cert. den'd*, 522 U.S. 1117 (1998). "As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

There is generally a two-part test in determining whether qualified immunity should be granted to a state actor: (1) whether the plaintiff has established a deprivation of a constitutional right; and, if so, (2) whether the right was clearly established at the time of the alleged violation. *Wilson v. Layne*, 526 U.S. 603, 609 (1999). The question of whether immunity attaches is a question of law. *Elder v. Holloway*, 510 U.S. 510, 516 (1994). If qualified immunity applies to

16

an officer's conduct, "the officer should not be subject to liability or, indeed, even the burdens of litigation." *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596 (2004).

In considering the two-step procedure for addressing the defense of qualified immunity as articulated in *Wilson,* district courts are invited to proceed directly to the second prong; namely, whether the constitutional right was clearly established in a particularized sense, even if there is a material issue of fact that would prevent summary judgment on the underlying question of whether there was indeed a constitutional deprivation. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

When the defense of qualified immunity is raised, the plaintiff bears the burden of proving the existence of a clearly established right. *Kernats v. O'Sullivan*, 35 F.3d 1171, 1176 (7th Cir. 1994). Further, a plaintiff bears the burden of showing that the alleged violation was clearly established "before the defendants acted or failed to act." *Rice v. Burk*, 999 F.2d 1172, 1174 (7th Cir. 1993). The plaintiff must demonstrate the existence of a clearly established right by identifying a closely analogous case that had decided that the conduct was forbidden. *Forman v. Richard Police Department*, 104 F.3d 950, 958 (7th Cir. 1997). In determining whether the right alleged to have been violated was "clearly established," a constitutional right must have been identified in a particularized sense with regard to the circumstances of the alleged violation. *Warlick v. Cross*, 969 F.2d 303, 309 (7th Cir. 1992).

Here, qualified immunity shields the Defendants from liability because Inmate Pozo does not meet his burden of showing facts supporting a viable constitutional claim. With respect to the first prong of his First Amendment Claim, the record establishes that Inmate Pozo failed to establish that the actions taken by the Defendants in this case imposed a substantial burden on his

17

religious beliefs, as discussed above. Thus, the Court need not reach the second step of the analysis.

Nevertheless, it is clear Inmate Pozo does not satisfy the second prong: whether the right was "clearly established" at the time of the incident. To be clearly established, the right "must be sufficiently clear that every reasonably official would have understood what he is doing violates that right." *Reichle v. Howards*, 132 S. Ct. 20188, 2093 (2012. This is a high bar to establish. *Kramer v. Pollard*, 497 F. App'x 639, 642 (7th Cir. 2012). For Inmate Pozo to defeat a qualified immunity defense, he needs to show that "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, (2011).

The inquiry into whether a right is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Borello v. Allison*, 446 F.3d 742, 750 (7th Cir. 2006) (citing *Brosseau v. Haugen*, 543 U.S. 194 (2004)). "It is insufficient for a plaintiff simply to point out a recognized constitutional right and claim that the right has been violated." *Id.* Further, "[a] right is not clearly established if officers of reasonable competence could disagree on the issue." *Ulichny v. Merton Comm. Sch. Dist.*, 249 F.3d 686, 706 (7th Cir. 2001).

When the defense of qualified immunity is raised, the plaintiff bears the burden of proving the existence of a clearly established right. *Kernats v. O'Sullivan*, 35 F.3d 1171, 1176 (7th Cir. 1994). Further, a plaintiff bears the burden of showing that the alleged violation was clearly established "before the defendants acted or failed to act." *Rice v. Burk*, 999 F.2d 1172, 1174 (7th Cir. 1993). The plaintiff must demonstrate the existence of a clearly established right by identifying a closely analogous case that had decided that the conduct was forbidden.

18

*Forman v. Richard Police Department*, 104 F.3d 950, 958 (7th Cir. 1997). In determining whether the right alleged to have been violated was "clearly established," a constitutional right must have been identified in a particularized sense with regard to the circumstances of the alleged violation. *Warlick v. Cross*, 969 F.2d 303, 309 (7th Cir. 1992).

Inmate Pozo cannot show any clearly established First Amendment right against the Defendants when they had no involvement regarding the issues. Inmate Pozo does not meet his burden of identifying that any right claimed is closely established because he cites no closely analogous case.

Nor can Inmate Pozo show any clearly established right at the time of the incident to receive a free holy Bible or Quran or to be advised regarding Ramadan when no request had ever been made. In fact, a jail is not required to pay for an inmate's devotional accessories, including holy texts. *Cutter v. Wilkinson*, 544 U.S. 709, 720, 125 S. Ct. 2113, 2121 (2005) (citing *Charles v. Verhagen,* 348 F.3d 601, 605 (7th Cir. 2003)). Even in the newspaper clipping that Inmate Pozo attached to his affidavit, there is no clearly held right that a jail must pay for an inmate's devotional accessories. First, that case is from Colorado and was a settlement, not a decision. Second, that case pertains to restricting an inmate from possessing his own personal Quran. In this case, Inmate Pozo could have purchased his own personal Quran and kept it in his cell, as Dodge County Detention Facility rules clearly allow. (DPF ¶¶ 12, 41-42). Additionally, Inmate Pozo was never denied a Quran. Rather he was told they were available in the library and then provided one. Therefore, Inmate Pozo fails to show that there is a clearly established right to receive a free holy Bible or Quran.

19

Finally, there is no case that identifies a "clearly established" right to be advised individually concerning religious holidays. If an inmate has a question about when Ramadan starts or wants to participate in Ramadan, he can make such a request to the jail. In the newspaper clipping Inmate Pozo attached to his affidavit, the plaintiff was denied his request to participate in Ramadan. However, the record shows that Inmate Pozo never made any such request relating to Ramadan in this case. As Inmate Pozo cannot show that any of these claims relate to a "clearly established" right, the Defendants are entitled to qualified immunity and these claims must be dismissed.

## VII. THIS COURT SHOUD GRANT SHERIFF SCHMIDT AND CHAPLAIN BAUER'S MOTION FOR SUMMARY JUDGMENT

Even though Inmate Pozo filed a motion for summary judgment, this Court has the discretion to grant Sherriff Schmidt and Chaplain Bauer's pending motion for summary judgment. Inmate Pozo has failed to make a showing sufficient that he is entitled to summary judgment. Nor is there sufficient evidence to continue his claims against Sherriff Schmidt and Chaplain Bauer. Therefore, for the arguments and evidence presented in the Defendants' motion for summary judgment and in response to Inmate Pozo's motion for summary judgment, this court should grant Sheriff Schmidt and Chaplain Bauer's motion for summary judgment.

## CONCLUSION

For all of the reasons above, Defendant respectfully requests that the Court deny Inmate Pozo's Motion for Summary Judgment with prejudice with costs and disbursements allowed by law. The defendants also request that this Court grant their motion for Summary Judgment with costs and disbursements allowed by law.

Dated this 10th day of October, 2019.

By:  s/Amy J. Doyle
    AMY J. DOYLE
    State Bar No. 1001333
    JOSE A. CASTRO
    State Bar No. 1098146
    Attorneys for Defendants Sheriff Dale J.
    Schmidt and Chaplain Timothy Bauer
    **CRIVELLO CARLSON, S.C.**
    710 N. Plankinton Avenue, Suite 500
    Milwaukee, WI 53203
    **Telephone**:  (414) 271-7722
    **Fax**:  (414) 271-4438
    **Email**:  adoyle@crivellocarlson.com
        jcastro@crivellocarlson.com

21