# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

RODOSVALDO POZO,

    Plaintiff,

v.                                        Case No. 18-CV-1486

DALE J. SCHMIDT and
TIMOTHY BAUER,

    Defendants.

## ORDER

Plaintiff Rodosvaldo Pozo initiated a lawsuit under 42 U.S.C. § 1983, alleging that the defendants violated his civil rights while he was an immigration detainee at the Dodge County Detention Facility in 2018. The court screened the amended complaint and allowed Pozo to proceed against Sheriff Dale J. Schmidt and Chaplain Timothy Bauer on a claim that they violated his First Amendment right to the free exercise of his religion based on allegations that they denied him a Quran, prevented him from participating in Jumu'ah services, and did not allow him to participate in Ramadan. (ECF No. 9.) Both Pozo and the defendants moved for summary judgment.[1] The motions are ready for the court's decision.

---

[1] The defendants filed a motion for summary judgment (ECF. No 27) and then filed an amended motion (ECF No. 33). The court will deny the original motion as moot.

# 1. Motions for Summary Judgment

## 1.1 Procedural Issues

As a preliminary matter, the court will address two arguments the defendants make in support of their motion for summary judgment regarding this district's local rules. First, the defendants argue that the court should deny Pozo's motion for summary judgment for failure to comply with the relevant rules. The defendants are correct that, when Pozo first filed his motion for summary judgment, he failed to follow this district's local rules. Specifically, under Civil L.R. 56(b)(1) a party moving for summary judgment (among other requirements) must file a statement of proposed material facts. Pozo failed to do so. That alone would be grounds to deny the motion. Civil L.R. 56(b)(1)(C)(iii). However, as the court noted in its order denying his request for the appointment of counsel, Pozo ultimately did file a statement of proposed findings of fact, albeit without citing any evidentiary support for them.

Similarly, the defendants argue that the court should take all of their proposed findings of fact as true because Pozo failed to properly respond to the them when he did not cite any support for his responses. *See* Civil L.R. 56(b)(4). However, Pozo did submit a sworn declaration (which he titled an affidavit) in support of his own motion.

Rather than denying Pozo's motion, or taking all the defendants' proposed facts as true, based on alleged violations of the local rules, the court will consider Pozo's declaration to the extent it supports his proposed findings of fact or his responses to the defendants' proposed findings of fact.

2

*1.2 Relevant Facts*

Pozo was incarcerated as an Immigrant and Customs Enforcement (ICE) detainee at the Dodge County Detention Facility between April 5, 2018, and August 28, 2018. (ECF No. 38, ¶ 3; ECF No. 41, ¶ 1.) He is a devout Muslim. (ECF No. 25, ¶ 3.) Defendant Sheriff Dale L. Schmidt has been the elected sheriff of Dodge County since 2015. (ECF No. 38, ¶ 1.) Defendant Chaplain Timothy Bauer volunteers at the Dodge County Detention Facility. (*Id.*, ¶ 2.)

While detained at the Detention Facility, Pozo requested that he be given a Quran, that he be allowed to participate in Ramadan, and that he be allowed to participate in Jumu'ah services.[2] (ECF No. 25, ¶¶ 1, 2, 5, 6.) According to Islam, participation in Jumu'ah services is mandatory. (*Id.*, ¶ 6.) Pozo does not specifically state in what manner he "requested" these things. That is, he does not say whether he made one or more of these requests to one or both of the defendants verbally, or whether he made the requests in writing. Because he states that he "sent several requests to the defendants" to grant him the right to practice his religion (ECF No. 25, ¶ 9), the court understands him to be saying his requests were submitted to the defendants in writing.

---

[2] Pozo also mentions not being allowed to wear his Kufi, but he was not permitted to proceed on a claim related to wearing a Kufi. (*See* ECF No. 9.) He did not make those allegations in his amended complaint. (ECF No. 8.)

3

Case 2:18-cv-01486-WED   Filed 05/05/20   Page 3 of 16   Document 49

### 1.2.1 Sheriff Schmidt

As Sheriff, Schmidt is aware of the overall operations of Dodge County Detention Facility. (ECF No. 38, ¶19.) However, he is not involved in its day-to-day operation. (*Id.*) Schmidt declares that he had no contact with Pozo while Pozo was at the Detention Facility. (*Id.*, ¶21.) Pozo, however, says he sent several requests to both Schmidt and Bauer about issues with practicing his religion. (ECF No. 25, ¶¶ 2, 9.) Schmidt did not make or participate in any decision or provide any input on inmate requests, including Pozo's requests for a Quran, attending Jumu'ah services, or participating in Ramadan. (ECF No. 38, ¶¶ 21-22.) Schmidt also did not have any role in arranging for religious leaders to volunteer at the Detention Facility. (*Id.*, ¶ 23.)

### 1.2.2 Chaplain Bauer

During 2018 Bauer did not visit the Dodge County Detention Facility on a regular basis. (ECF No. 38, ¶ 24.) He met with inmates for spiritual and emotional support (*id.*) and, on occasion, to determine if an inmate's particular religious request was based on a sincere commitment to a recognized religion or set of religious beliefs and then provided his recommendation to the Programs Corporal (*id.*, ¶¶ 25, 26). Bauer did not have the authority to make decisions with respect to whether an inmate could participate in religious services, whether he should be provided religious items (such as a Quran), or whether he could participate in Ramadan. (*Id.*, ¶ 27.) He also had no role in providing religious books or materials to inmates or coordinating religious services. (*Id.*, ¶¶ 34, 36, 37.) If an inmate made any of those requests, Bauer would recommend that the inmate make the request to a jail officer. Bauer did not

4

respond to inmate requests. (*Id.*, ¶ 34.) If an inmate asked about the dates of Ramadan, Bauer would try to obtain the information using his cell phone and, if he was unable to determine the dates, he would refer the inmate to make an inmate request to a jail officer. (*Id.*, ¶ 35.)

Bauer had one contact with Pozo, which occurred on or around June 14, 2018. (ECF No. 38, ¶ 28.) Pozo was wearing metal hair clips at the time, which he said were religion-based. The jail administration was concerned about safety and asked Bauer to meet with Pozo. (*Id.*) Pozo told Bauer that the metal clips were "kind of" a religious issue and that he would prefer to keep them in his hair. (*Id.*, ¶ 30.) Bauer says that, during that meeting, Pozo never raised any issue regarding Jumu'ah or Ramadan, nor did he request a Quran. (*Id.*, ¶ 31.) Pozo states in his declaration that he told Bauer about "these religious issues," though he does not say if it was during the meeting. (ECF No. 25, ¶ 10.) He notes that Bauer gave him his card. (*Id.*) Bauer says that, if Pozo had raised concerns outside the reason for his visit (the metal hair clips), he would have noted them in his email to the Programs Corporal. (ECF No. 38, ¶ 32.) He also says that, if Pozo had told him about the Quran, Jumu'ah services, or Ramadan, he would have told Pozo to talk to a jail officer or contact the Program Corporal. (*Id.*, ¶ 33.)

### 1.2.3 Religious Requests

Corporal Matthew Marvin, who is not a defendant, is the Dodge County Detention Facility's Programs Corporal/Community Relations Officer. (ECF No. 38, ¶ 38.) He is responsible for handling inmates' religious requests for a special diet,

5

religious items, and other types of religious requests. (*Id.*) At the time of booking, inmates are asked if they have a religious affiliation. (*Id.*, ¶ 39.) Both orientation and the Inmate Handbook instruct inmates to make requests with the Detention Facility's Program Specialist for any special needs associated with their religion. (*Id.*) Inmate requests for things considered essential to the practice of his religion are reviewed for legitimacy and approved by a Program Specialist or other person deemed an expert on the subject. The Program Specialist makes a recommendation to the Jail Administrator with his findings. All religious programming is provided within the framework of facility safety and security guidelines. (*Id.*)

Religious books, including Bibles and Qurans, are available in the Detention Facility library for inmates to use or check out. (ECF No. 38, ¶ 41.) All religious books are donated by the community or others and are not items the Detention Facility purchases. (*Id.*) If an inmate has a religious book at the time of booking, the item is inspected for safety and security concerns. (*Id.*, ¶ 42.) If the book does not pose any concerns, officials allow the inmate to keep the book in his cell. (*Id.*) Inmates are not automatically given copies of religious books at the time of booking.[3] (*Id.*, ¶ 43.) Regardless of religious affiliation, inmates may request a religious book, such as a Bible or Quran, from the jail library. (*Id.*) Inmates can also purchase their own religious books from publishers or bookstores. (*Id.*, ¶ 44.) Pozo's jail records do not

---

[3] In his declaration, Pozo says that Catholic and Christian inmates receive a Bible upon arrival at the institution. (ECF No. 25, ¶ 4.) However, Pozo offers no evidence in support of this statement. The court will therefore not consider it.

show that the Detention Facility ever refused to allow him to possess a Quran. (*Id.*, ¶ 45.)

If a Muslim inmate requests to participate in Ramadan, arrangements are made to allow that inmate to participate. (ECF No. 38, ¶ 46.) If an inmate is not sure when Ramadan takes place, he can request that information by asking an officer or by submitting an inmate request. (*Id.*, ¶ 47.) Muslim inmates are not forced to participate in Ramadan. (*Id.*)

When an inmate requests to attend religious services or to speak with a religious leader, the Dodge County Detention Facility determines if such services are currently being provided. (ECF No, 38, ¶ 48.) If they are not, the Detention Facility contacts religious leaders to determine if they would be willing to volunteer at the jail. (*Id.*) Part of Corporal Marvin's duties in 2018 was to coordinate religious services at the Detention Facility, which included contacting local religious leaders to volunteer their time to conduct services or meet with inmates. (*Id.*, ¶ 49.)

If an inmate requests Jumu'ah services or spiritual support from an Imam or other Islamic leader, attempts will be made to locate one willing to volunteer their services. (ECF No. 38, ¶ 50.) In Juneau, Wisconsin, a small, rural community, it is difficult to find religious leaders to come to the jail to offer services or see inmates. (*Id.*, ¶ 51.) In 2018 the Detention Facility made regular attempts to contact a Rabbi for Jewish inmates and an Imam for Muslin inmates. (*Id.*) That year Corporal Marvin regularly worked with jail staff to try to locate and secure a volunteer to conduct Jumu'ah services, including contacting Mosques and Imams in Milwaukee, Green

7

Bay, Appleton, and other areas, as well as volunteers from other institutions. (*Id.*, ¶¶ 52, 55.) Jail personnel would often ask inmates if they had the names of any Muslim leaders who might be willing to conduct services. (*Id.*, ¶ 54.) While an Imam occasionally met with inmates, the Detention Facility could not find an Imam or other Islamic leader to regularly volunteer their services in 2018 (including leading Jumu'ah services). (*Id.*, ¶ 53.) Because there was not a volunteer willing to lead Jumu'ah services, they were not available during Pozo's incarceration in 2018. (*Id.*, ¶ 56.)

Though Jumu'ah services were not offered, inmates could practice Islam in other ways. (ECF No. 38, ¶ 57.) Inmates could pray individually in their cells, make dietary requests, engage in individual study and observation, meditate, utilize religious books and property, and correspond with Muslim religious leaders or other Muslim individuals. (*Id.*)

*1.3 Summary Judgment Standard*

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). When considering a motion for summary judgment, the court takes evidence in the light most favorable to the non-moving party and must grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986). "Material facts" are those under the

8

applicable substantive law that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

*2.1 Analysis*

The defendants make a number of arguments in support of their motion for summary judgment. To begin with, they argue that Pozo failed to exhaust his administrative remedies as required under the Prisoner Litigation Reform Act (PLRA). The court disagrees. As discussed below, the PLRA does not apply to Pozo. Nonetheless, the defendants are entitled to summary judgment on other grounds.

### 2.1.1 Exhaustion of Administrative Remedies

The defendants first argue that they are entitled to summary judgment because the PLRA requires prisoner plaintiffs to exhaust their claims through the institution's grievance system before filing a civil lawsuit. 42 U.S.C. § 1997e(a). Pozo argues that the PLRA does not apply to him because he was an ICE detainee, not a prisoner.

The PLRA applies to "prisoners" as that term is defined by the PLRA:

> As used in this section, the term "prisoner" means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.

42 U.S.C. § 1997e(h). The court has not found a case from the Court of Appeals for the Seventh Circuit that addresses the issue of whether inmates detained based on an immigration hold are "prisoners" under the PLRA. However, other circuit courts have found that immigration detainees are not prisoners under the PLRA.

In *Ojo v. I.N.S.*, 106 F.3d 680, 682 (5th Cir. 1997), the Court of Appeals for the Fifth Circuit held that, because the plaintiff's detention was based on a violation of immigration law rather than criminal law, he was not a prisoner under the PLRA.. The Court of Appeals for the District of Columbia reached the same conclusion, explaining that, once the plaintiff was detained for deportation purposes, he became an "alien detainee" and not a "prisoner." *LaFontant v. I.N.S.*, 135 F.3d 158, 165 (D.C. Cir. 1998). The Courts of Appeals for the Fourth and Ninth Circuits agree. *Preval v.*

10

*Reno*, 2000 WL 20591, *1 (4th Cir. Jan. 13, 2000) (unpublished) (finding that plaintiff's confinement as an immigration detainee was not encompassed by the PLRA's definition of prisoner); *Agyeman v. I.N.S.*, 296 F.3d 871, 886 (9th Cir. 2002) (explaining that immigration proceedings are civil in nature and, therefore, immigration detainees are not prisoners). The Courts of Appeals for the Eighth, Ninth, and Eleventh Circuits have found that other civil detainees are not covered by the PLRA. *Page v. Torrey*, 201 F.3d 1136, 1139–40 (9th Cir. 1999); *Perkins v. Hedricks*, 340 F.3d 582, 583 (8th Cir. 2003); *Troville v. Venz*, 303 F.3d 1256, 1260 (11th Cir. 2002).

The court finds these cases persuasive. A finding that the PLRA applies to immigration detainees would ignore the longstanding understanding that immigration proceedings are civil—not criminal—in nature. *See, e.g.*, *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984). When Congress drafted the PLRA, it defined "prisoner"—the group of people to which it applies—specifically to mean individuals who are in custody as the result of a criminal matter—whether by an accusation, conviction, or violation of some kind of supervised release. 42 U.S.C. § 1997e(h). By its plain language, § 1997e(h) does not apply to immigration detainees. *See United States v. Berkos*, 543 F.3d 392, 396 (7th Cir. 2008) (internal citations omitted) (explaining that statutory interpretation begins with the plain language of a statute and is conclusive absent "clearly expressed Congressional intent to the contrary"). As such, Pozo was not required to exhaust his claims through the institution's grievance system before filing a civil lawsuit.

11

### 2.1.2 Personal Involvement

The defendants make a series of arguments about why they are entitled to summary judgment. They argue that Bauer was not a state actor, that neither Schmidt nor Bauer was personally involved in any constitutional violation, that Pozo's claims fail on the merits, and that they are entitled to qualified immunity. The court finds that there is no evidence that either of the defendants was personally involved and that they are entitled to summary judgment on that basis. As a result, the court does not reach the alternative arguments.

Pozo alleges that the defendants impeded his ability to practice his religion in three ways: he was denied a Quran, he was not able to participate in Ramadan, and he was not able to attend Jumu'ah services. Section 1983 limits liability to public employees who are personally responsible for a constitutional violation. *Burks v. Raemisch*, 555 F.3d 592, 595-96 (7th Cir. 2009). That is, for liability to attach, the individual defendant must have caused or participated in a constitutional violation. *Hildebrandt v. Illinois Dept. of Natural Resources*, 347 F.3d 1014, 1039 (7th Cir. 2003). Therefore, Pozo must show that Schmidt and/or Bauer were personally involved in violating his constitutional rights.

Schmidt has established that, though he is aware of the overall operations of the Detention Facility, he is not involved in its day-to-day operation. He did not have any role in deciding whether Pozo should receive a Quran or participate in Ramadan or in arranging for religious leaders to volunteer to provide Jumu'ah services. He states he had no contact with Pozo while Pozo was at the Detention Facility and did

12

not review or respond to any requests from Pozo about practicing his religion. Schmidt also says he does not review or approve inmate requests in general.

Pozo's only admissible evidence to the contrary is his statement that he "sent several requests" to "the defendants" about his right to practice his religion. (ECF No. 25, ¶ 9.) In the context of correspondence as evidence that a defendant knew of the alleged constitutional violation, the Court of Appeals for the Seventh Circuit has held that a plaintiff has to demonstrate "that the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him" of the alleged violation. *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1997). For example, in *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006), overruled on other grounds by *Hill v. Thangerlini*, 724 F.3d 965 (7th Cir. 2013), the plaintiff sued the director of the Illinois Department of Corrections, among others, based on allegations that they failed to provide sufficient accommodations for his disability. In examining whether the director was personally involved in the alleged violations, the court noted that Johnson averred that he informed the director about his medical issues. The court found that, even taking Johnson's statement as true, it was not enough to overcome the director's affidavit, which explained that he did not personally receive or review inmate grievances. *Id.* Citing *Vance,* the court noted that Johnson had presented no evidence that the director read Johnson's communication or even knew of it. Finding that the affidavit did not create a genuine dispute of material fact with respect to the director's personal involvement in violating Johnson's constitutional rights, the court

13

affirmed the district court's decision to grant summary judgment in the director's favor.

Although Pozo's declaration states that he sent several requests to Schmidt, it does not say when he sent them or what the requests said. *Vance*, 97 F.3d at 994 (highlighting that the plaintiff failed to supply a description of the contents of the letter she purportedly sent). More importantly, Schmidt says (1) he neither received anything from Pozo or had any contact with him, and (2) he does not review inmate requests or investigate complaints about religious requests. As in *Johnson*, Pozo's statement that he sent Schmidt several requests fails to create a triable issue of fact with respect to Schmidt. No evidence exists that Schmidt ever received or reviewed any requests from Pozo. Pozo has presented no evidence that any correspondence he sent actually put Schmidt on notice of any of Pozo's religious claims. In sum, Pozo has presented nothing to show that Schmidt "personally facilitated, approved, condoned, or turned a blind eye" to his situation. *Johnson*, 444 F.3d at 584. Therefore, Schmidt is entitled to summary judgment.

With respect to Bauer, the evidence is that, though Bauer would periodically meet with inmates, he had no authority to decide what religious books or objects they could have, what services they could attend, or what practices they could observe. Instead, if an inmate brought up those issues, Bauer would direct the inmate to contact a jail official to address his concern. Bauer had no role in reviewing or deciding inmate grievances. Bauer met with Pozo once—on June 14, 2018—to discuss hair clips Pozo was wearing. Although Bauer says that Pozo never raised any issues

14

about Jumu'ah or Ramadan or a request for a Quran, in his declaration Pozo says he told Bauer about "these religious issues." Pozo does not say *when* he told Bauer or what specifically he said. (ECF No. 25, ¶ 10.)

Even assuming Pozo did tell Bauer about "these religious issues," Bauer had no authority to address Pozo's requests. The uncontroverted evidence is that Bauer could not have done anything to get Pozo a Quran, ensure he participated in Ramadan, or arrange for Jumu'ah services. He had no authority to address any issue or complaint Pozo may have raised. Even assuming that Pozo has established that Bauer knew about his complaints, he has not established that Bauer was responsible for addressing those complaints—that is, he has not established that Bauer violated his constitutional rights. *See Flournoy v. Schomig*, 418 Fed. Appx. 528, 531 (7th Cir. 2011) (affirming summary judgment for defendant where she had no authority to act on a complaint, therefore not creating an issue of fact with respect to personal involvement).

Because the court finds that neither Bauer nor Schmidt was personally involved in any alleged violation of Pozo's constitutional rights, they are entitled to summary judgment.

## 2. Conclusion

**IT IS THEREFORE ORDERED** that Pozo's motion for summary judgment (ECF No. 24) is **DENIED** and the defendants' amended motion for summary judgment (ECF No. 33) is **GRANTED.** The Clerk of Court will enter judgment accordingly.

15

**IT IS ALSO ORDERED** that the defendants' motion for summary judgment (ECF No. 27) is **DENIED as moot**.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 5th day of May, 2020.

*William E. Duffin*
WILLIAM E. DUFFIN
U.S. Magistrate Judge